v. Martin. All right. Good morning, Mr. Poderza. You've reserved two minutes for rebuttal, and you can begin whenever you're ready. Good morning, Your Honors, and may it please the Court. Phoebe Poderza on behalf of Dependent Appellant Tyreke Martin. In March of last year, Mr. Martin pled to a Grade C violation, not living at an address approved by probation. Everyone was asking for a sentence somewhere within the guidelines range of 5 to 11 months. The District Court instead gave Mr. Martin the statutory maximum of two years. To reach the statutory maximum, the Court relied on unproven allegations for Mr. Martin's arrest on October 30, 2024. Why don't I just ask you, let's see if we can figure out what the law is, and then we can talk about whether or not the District Court could have a procedural violation. So would you agree that although the Court can't consider uncharged criminal conduct that was not admitted to, like whether the car was stolen, whether the guns were his, the Court clearly can't consider that. But would you agree with me that the Court can consider if someone absconds from supervision, the circumstances under which they're found generally, that that's a relevant consideration? That, in other words, I think you even said at the sentencing, this was a concerning circumstance, I think was the term you used. You would agree that under our case law, a judge can consider the context in which someone was found, right? In this case, not in this case, Your Honor. Why is it important when someone cuts off their bracelet and flees and is under no supervision and is found, is arrested and found under certain circumstances that are concerning, that that creates more of a danger to the public than someone who was found serving homeless people at a soup kitchen. That's a different circumstance. Whereas when someone absconds, they're preventing the probation officer from examining concerning circumstances and investigating, and that's the very purpose of supervision. So why can't a court say, you know what, the fact that you were found in that situation, and by absconding, you're preventing a probation officer from making sure that you're not involved in criminal activity, that needs more deterrence and needs more for protection of the public. Why is that the Court can't consider that? The question is, we can have a debate about what facts are properly, are proper to consider under 3553. The question, but the issue in this appeal, is whether any fact, any fact relied upon, must be admitted to or found pursuant to proper procedure. Aldean and other cases in this, in this circuit. I'm suggesting to you that it was undisputed that he was arrested under concerning circumstances. That was undisputed, right? It was. That was the statement I made in a revocation, and I would note I was trial counsel for the district court. That was the statement that I made in my revocation memorandum prior to the hearing. That was not an admission. It was also at the sentencing itself. There was a similar one for those long lines, right? No, I did not make a similar statement at the revocation hearing itself. What I did say, and I would direct the Court to Appendix 43 to 46, where I made a strenuous objection to the Court considering, direct quote, any factual allegations surrounding his arrest. I repeatedly referred to that. And the Court said, look, I get it. It's a fair point. I can't consider that there's a claim that he was in a stolen car and that there were guns found in the path of where he ran from the car and was apprehended on site. But what about the fact that this is now the second time your client has cut off a GPS bracelet? I looked at the record, and it appears that on 9-30, and this is in the record, your client on July 27th, first time he's on probation for a previous conviction for attempted assault in the first degree, being in possession of guns and shooting someone and actually hitting someone, injuring someone. He goes to jail. When he gets out, he goes on probation. He is released. And on July 27, 2021, on September 30th, a mere two months later, he's referred to AIC, Alternative Incarceration Center, presumably because he wasn't doing well. And on October 13th, he's stopped by the New Haven police yet again in a car in the middle of the intersection. He refuses to give permission for the police to move the car. He says he's asleep. And when they bring a tow truck, he takes off, and he cuts off the electronic monitoring he has. That's in the record. Can't the Court take notice of that? This is now the second time he's cut off a GPS monitoring. By the way, there's a search warrant obtained for that vehicle, and they find substantial drugs and ammunition in that vehicle. That's all in the PSR. Why can't the Court consider that? So there's a lot to unpack there, Your Honor. First, I think it's worth highlighting, it appears Your Honor agrees with the defense's position, which is that any fact relied upon. And it seems Your Honor agrees. The Court did not consider at the time I made my objection. The Court did not consider Mr. Martin or Mr. Martin, through counsel, to have made any admissions. Have you considered the guns? Correct. And that he wasn't charged with guns for that later incident. My question is different. The Court said, I can't consider the context of how he came to be in custody, right, that he had cut off his GPS monitoring. And my question to you is, why can't the Court consider that this is the second time now he's cut off the GPS monitoring so that he's not detected? Thank you, Your Honor, for your question. It's important to look at what the Court did – whether the Court could have considered that. The fact is it did not consider that. It did not cite the prior. How do we know that? The Court said – mentioned his history, and it's right in his history. How do we know the Court didn't consider it, counsel? The real issue is what – did the Court consider something improperly? That's the focus of this appeal. We maintain we properly objected. Mr. Martin did not admit to facts. Once we establish that there's a procedural error that was preserved, we maintain there was. Then it's – You want us not to take the Detroiters' word. He said multiple times when he did object to consideration of the guns or the stolen car, he said it. He said, fair point. Fair point. I'm not going to do that. And you're saying to us, well, he did it anyway. Even though he said multiple times, I'm not doing that. I'm just considering the context of the arrest overall. I'm not considering the guns or the stolen car. So if he sent it back, I think he would say the same thing. If he said this was procedurally unreasonable, he would say, I said the last time that I did consider the guns. And you give the same two years with me. Your Honor, respectfully, that's not what the record reflects. What he says in the colloquy is, I understand your client hasn't admitted to anything. That's what you're – that's what the district court said at, I believe, Appendix – it was between Appendix 44 and 46. I have it right in front of me. The court wants – in response to your objection, the court said, the court does make clear that to its knowledge, someone has not been charged with a gun or ammunition offense as related to the October arrest, so he's not charged here. The sentence is for his violation of supervised release by failing to remain a group resident and for failing to perform probation of the change in his home. So in response to the objection, he states clearly that he is not considering and considered more than one time. He said it at page 44 of the record, at page 55 of the record, and then he said what he is considering it for, that it's helpful context in deciding whether Mr. Martin is amenable to supervision and whether it would be reasonable to release him back under supervision when this is the context of his conduct under that supervision in terms of cutting off the bracelet and the plate. So I don't know why we would send it back for him to say the exact same thing. That's why I asked you the question at the beginning, Mike. Is he wrong on the law that he just can't – he has to imagine no arrest, and I don't think that's the law. He – so we admitted there was an arrest, but everything else we did not admit to. And if I may, the court – I'm citing Appendix 55. I would cite Appendix 55 for the position that the court did, in fact, rely on all of these factual allegations far beyond the simple fact of arrest. And I would also invite the court to look back at the government's response. It does not dispute that the court considered this. Multiple headings in its brief are that the court could have considered these, and it defends it. It does not dispute the court considered all of the factual allegations that we properly objected to. If I may, in Appendix 55, it says, To the contrary, weeks after Mr. Martin left his approved residence and cut off his state-issued monitor, he was seen in a stolen car along with another person and fled from police, similar to the conduct which led to his arrest in the underlying case. While did they not – while the police did not find a loaded gun on his person, they did find two pistols along the path. The court found – the court referenced that right before it imposed the statutory maximum. No, it referenced that. You objected. He said that's a fair point. And then he said what I just said. That came first, the description. You said, Judge, you can't consider that. He said, fair point. And then he said what I just said. That was the sequence, right? Your Honor, if I may, we think it's – we think the record is clear that the court considered it. The government, as far as party presentation rule, the government does not dispute that the court considered it. All right. Let's see from that. Can I say a question? We spent a lot of time on whether or not the court adequately or appropriately considered something. What I have not heard, and it's because we've been asking you questions on that matter, is why do you think the court's explanation was not enough when they – when we had these, like, lengthy discussions about all of this back and forth? Like, what more needed to get said? Thank you, Your Honor. It's our position that once we've identified a procedural error and preserved it, the burden shifts to the government to show why that error was not harmless. So I think it's the right question to be asking is the government, how do we know with enough confidence that this didn't affect the outcome of the proceedings? It, of course, affected the outcome of the proceedings the same way that – Well, I understood your argument. I think I understand that argument, but I'm going more to the adequacy of the explanation provided, which I think is different. That is what you – I think we've all heard and we've all discussed whether or not the district court was considering something they shouldn't have. The question that you also raise is that the district court did not appropriately explain everything. And what I am hearing and struggling with is that some of your explanation back to my colleagues trying to prove your point that the judge inappropriately considered information suggests that there was a pretty decent explanation. So can they – can you help me unpack, like, why it could both be true that we have lots of evidence about improperly considered materials and there was still not enough of an explanation? Thank you, Your Honor. So I think Your Honor is asking a question along the lines of where that gets to the reasoning of Aldine. Exactly. So, the question I would ask is, if the district court finds that a whole set of facts was improperly considered, you have to excise those facts from the record and determine whether there was adequate justification from the remaining record. The remaining record was a grade C violation, Mr. Martin's first violation, and the court arrived at a 24-month sentence, the statutory maximum. Following – I mean, in Aldine, it was reversed on plain error that the court went eight months above the guidelines range for what was ultimately a technical violation, and I would note Aldine was not – that was not the first violation in that case. So there is serious doubt – there is serious doubt that what remained in the record would have justified the 24-month sentence. This sort of dovetails also with the – another argument we make, which is substantive reasonableness, and it's sometimes hard to – Well, let me just say – let me frame the question, and you can tell me whether I'm framing it improperly. If – and Judge Confort was not – but what the judge relied upon was, first of all, its underlying conviction is for a loaded firearm, right? That was the underlying conviction. I mean, it was for ammunition, but the facts were – Ammunition. But the facts were that it was a loaded firearm. I don't believe it was, Your Honor. No. Actually, the ammunition, I think, may have been – I can't speak to – well. There was ammunition in the car. How many months before he cut off the bracelet? Three months.  So he cuts off the bracelet. He's preventing any supervision of what I would consider a serious underlying crime, so they can't even supervise him at all. And if he can consider the fact of the arrest without considering the criminality that may have been involved, the question is whether or not 24 months is substantively unreasonable for that conduct. Is that the proper way to – at least for substantive reasonableness to frame this question or not? This Court is not – I understand the Court gives tremendous deference to the district court to decide that question, but this Court is not a rubber stamp, and we also have to think about unwarranted sentencing disparities. In the universe of cases that has been put forward by both parties, it's really – and a lot of these cases are actually provided by the government. I would urge the Court to look back at those cases and see which sentences at the statutory maximum were affirmed by this Court and which ones were not. Statutory maximum that was affirmed for 24 months, a violent – and this was United States v. Ezz, and I believe Your Honor sat on that panel. Violent robbery and stabbing were the victim. There was testimony where the victim told the assailant, you cut me 50 times in the face. United States v. Chin, statutory maximum of 24 months, domestic violence victim, feared for her life. There was testimony to that. These are government cases cited. An individual with two prior robberies was found to have violated supervisory release by shooting a man in broad daylight. Another individual, United States v. Smith, was found to have shot a person in the leg and got two years. I mean, Carthen got – Well, in this case, his first conviction, state conviction, involved shooting a victim, being with someone in possession of guns and ammunition, and shooting a victim as part of some organized activity in the ankle, and shooting another victim in the abdomen and the legs. So he goes – he goes to jail for that. He gets out. He violates probation, goes back in. He gets out. He's sent to AIC because he can't survive two months on probation. That is all in the PSR. The court has access to that. Cuts off. He's stopped two months. He – he absconds on 9-30. He's referred. He absconds. On 10-13, he is caught in another vehicle based on a report of a vehicle parked illegally in the middle of the intersection. He refuses to allow police to move the vehicle. He refuses to allow them to just move the vehicle to the side. They call a tow truck. He then runs from that vehicle, and he cuts off his GPS and throws it on I-95, where it's later found. And he – they tow the vehicle. They get a warrant for the vehicle, and they find heroin, I believe. They find ammunition in the vehicle. He is charged state. Those charges all allegedly get dropped when he takes this federal plea. So this is someone who has a long history. Why, when the court mentions, I'm looking at his history, why can't the court look at that? And, you know, the court's looking at the person in front of it, looking at the PSR and the information it has. So are you saying that the court can't look at the fact he cut off his GPS for the second time? Of course I'm not saying that. I'm saying that there needs to be a remand, because at a minimum, at a minimum, it is unclear whether on this record the district court would have been adequately whether reaching the statutory maximum there was adequate justification. I would note in response to your question, Judge Kahn, the government doesn't make any of these arguments in its brief. So the court doesn't explicitly rely on these facts. The government doesn't make any of these arguments in its brief. In addition, Your Honor, I would resist the analogy of the facts I cited, which were those were the – those were the bases of the supervisory liaise violation. We are not punishing – the purpose of this procedure is not to punish Mr. Martin for previous criminal conduct that wasn't even – because that's not allowed under esteris. But even so, it wasn't even the conduct – that was not even the conduct from the underlying conviction, respectfully, Your Honor, in this Federal case. So I don't think it's appropriate when looking at whether it's a substantively reasonable sentence, we can go as far back in his criminal history to talk about conduct that he's previously committed. And again, just to stress the point, JUA, United States v. JUA, which we talk about extensively, was a remand when it was unclear whether the remaining record was adequate. All right. Thank you. Thank you. Would you like to hear from the Governor? Good morning, Your Honors. May it please the Court. Stephanie Levick for the United States of America with the District – or the U.S. Attorney's Office with the District of Connecticut. So just picking up on where this Court was having a discussion with the Appellant's Counsel here, the Government did not dispute that the Court relied on certain facts in the record because those facts were undisputed by the defendant himself. The manner in which the defendant litigated his case below demonstrated an active acceptance of certain facts. Wait. Okay. Let me – I'm really surprised to hear that you're spending – that's the first thing that's coming out. I mean, so you've taken the position that he accepted the description of the arrest and the probation report. I'm assuming that you're going to say that the best evidence of that is A27 through A28. Is that correct? Correct. Okay. Can't we read it as that he agreed to the procedural history and exposure as stated by the Court as opposed to accepting all of the facts and the conducts in it? And do you need that in order to win? To answer your first question, I think that it is important to consider the sort of concession to the Court's summarization of the violation report. But I think even prior to that, there has been no objection to the facts. And I do want to distinguish – Agreeing that something was summarized accurately is not the same thing as agreeing that it is true. And that is the part that I am not understanding why there's so much focus on your argument. You can explain to me why you think the correctness of the position is. But I'd also be interested in hearing whether or not you think we have to agree with you in order for you to prevail. To answer your first question, I think it's important to distinguish what we're referring to when we talk about the facts that he has admitted to. So the facts that I'm referring to are the fact that he was arrested in a vehicle matching the description of a stolen car. That there were firearms found in his flight path. Not the inferences that could have been drawn from those facts of his arrest, meaning the possession of a stolen car or the possession of the firearms, which may have led to some criminal liability or that the Court could have factored in as that. And to be clear, the Court expressly disclaimed any reliance on any inferences that could be drawn from the circumstance of the arrest. To answer your second question, I don't think that the Court needs to find that the defendant admitted these facts in order to find that the Court properly relied on the information provided to the Court. It was not error to consider these facts. The Court has broad discretion on what it may consider when imposing incentives, so long as there is sufficient indicia of reliability as to the accuracy of those facts. Why don't we assume for a second, just to help me out here, that Mr. Barton did not concede the facts in the probation report. Where do you think the District Court made findings with respect to the defendant upon him admitting the facts in the probation report? I just want to make sure I understand the question. Where, you're asking where the Court indicated in the record that it was making findings as to what facts it was relying on? Well, aside from the admission. Right. What are the circumstances, where are the circumstances that are not part and parcel of him admitting the facts in the probation report? Well, the Court was entitled to rely on the violation report, which it's some. So one of them is the violation, okay, and he did refer to the charging probation violation, okay. One. What else? It was entitled to rely on the statements of both the government and the defense counsel when discussing the circumstances of the violation, including the. Well, and I'm asking with specificity, what are the circumstances of the violation that he referred to that are not the facts that he is claiming he did not concede to in the probation report? The circumstances of the violation, including failing to report to probation. So everything in the charge. Failing to respond when probation, both state and federal probation, made efforts to contact the defendant. The two-week lapse between the time that he left the halfway house and the Court's issuance of the arrest warrant, which the Court noted it had purposely waited two weeks in order to give the defendant some time to reach back out to his supervising probation officer. The three months that had lapsed since his commencement of supervised release before he violated in this manner. I think there was the defense counsel just now indicated that this was his very first violation, but I think the violation report lays out that there were other violations leading up to this point. He had not been in full compliance with his conditions of supervised release. He had failed drug tests. He had failed to comply with other technical conditions of supervised release by not showing up to work as required. He said, so I think it's a bit of a, he wasn't charged with those violations on supervised release, but that does not mean that there is no factual history indicating that he was noncompliant up to this point, which was a short term of three months. Can you spend a moment on the substantive reasonableness of the sentence? If the judge only considered the context, the extent of the arrest itself and what that meant about the ability to supervise him, that he prevented supervision entirely, the judge gave a long explanation of the purpose of supervision is to make sure someone stays out of trouble. So assuming the judge could consider it for that context, the question is, is 24 months too much, where it's a great C violation, five to 11 months, and as Mr. Durst had pointed out, the government, you didn't even ask for anything higher than that. The government went in and said, we want a guideline sentence, and the judge gave the max double of the advisory range. Why doesn't that create a substantive reasonableness problem? The argument is it can't bear the weight. Okay, we'll take the judge at his word. He didn't consider possession of guns or a stolen car. The question is, can the rest of it bear the weight? What's the answer to that? I think taking a look at the totality of the circumstances, yes, the sentence was absolutely substantively reasonable. Your Honor is correct that the government had asked for a guideline sentence, but that is simply a recommendation. I know, but you would agree it's pretty rare for a judge to give double what the government asked for. It's pretty rare, right? I think that in this context, doubling the amount, we're talking about months here. The numbers are much lower than it would be, I think, a different statement if the court had doubled a 10-year sentence to a 20-year sentence. This is going from one year to two years, and that's not to discount any day spent in prison. But you agree this is, you know, you agree this is a harsh sentence. I mean, you weren't asking for anything like this. So, you know, how often does the court, one, give a variance, which the court is entitled to do, and then double the amount of time? I mean, one might argue, what's the point of admitting to a violation of probation? Not that the evidence here is pretty clear of that violation, certainly, and perhaps others, if you've been charged, but what's the point? Why not, you know, I mean, it's a preponderance of the evidence. It's a much lower burden, but what's the incentive then to admit to the first part of the violation if you're going to get the maximum? Do you see what I mean? Yes, I understand what you're saying. And I think that it may differ in different courts whether and how often a court will go above the guideline sentence here. I mean, again, it was a policy statement. Guidelines range. And the court was much more familiar with the facts of the underlying case as well as the history of this particular defendant. What about unwanted sentencing? I suppose Mr. Berdorf had pointed to some of the other ones where that type of sentencing proposed obviously involved violent conduct and much more serious violations, like rape scene violations. So are you aware of any cases where someone who pled only to a grade C violation for, like, absconding or failure to report, whatever you want to characterize it, received a two-year sentence? Are you aware of any of those? Your Honor, I have not identified such cases. Why is that a problem? I think because this was not a simple technical violation. I think the charge that he admitted to was the technical violation of failing to report, but it was much more than that. It was his systematic defeat of federal supervision. He did not just simply fail to return one phone call. It wasn't on a lapse in judgment on one particular occasion. This was a prolonged effort to evade supervision. He cut off his state monitor, left the place that he was supposed to be residing, and was found in, at the minimum, concerning circumstances, using the words that defense counsel has used in their sentencing memo. The circumstances of his arrest after he absconded from federal supervision were, as the Court below noted, very similar to the circumstances of his arrest in his underlying case. And while the seriousness of the offense cannot be considered for retributive purposes, I apologize, I probably butchered that word, it can be considered to address whether there's a need for deterrence. Yeah. I guess the question that I'm struggling a little with is on the substantive unreasonableness, and I get your point. And there are cases that say when the sentence is six months or 11 months, doubling isn't so egregious because it's a small amount to begin with. But I guess what I'm struggling with is where is the line between what's just a really tough sentencer and a very harsh sentence, I don't think you would deny that this was the maximum, versus substantively unreasonable. And what in this record, in your view, suggests this is not substantively unreasonable? I think, again, the totality of the circumstances that the Court outlined when imposing the sentence, the need for deterrence here, I think he had made clear that he was not assured by any of the statements of the defendant or defense counsel that this particular defendant would be able to comply with supervision given his history of absconding from supervision and his flagrant disregard for the Federal supervision that he was on so soon after he commenced Federal supervision. I don't disagree that the sentence was the maximum, and I think it could be characterized as harsh. That said, I don't believe it was substantively unreasonable, and the Court was in the best position to impose an appropriate sentence given the concerns that it articulated on the record. All right. Thank you. Thank you, Your Honor. Ms. Rivas-Bedurtha, you have two minutes on your file. Thank you. Nowhere in the government's remarks did it address harmless error. The question is not whether possibly the district court could have gotten to the statutory maximum. The question is would removing all of the factual allegations around Mr. Martin's arrest have changed, possibly changed the outcome at the lower court. Perhaps the district court is a tough sentencer in Judge Kahn's words, but would he have given the statutory maximum? The answer is we can't be certain. Your Honor, your Honor's asked questions of the government. Is there any – was there any case that it was aware of? We don't agree that there's a procedure error. The question is whether or not it could be justified, that two years could be justified based upon the other factors, right? And the thing that – when I said you referred to concerning circumstances of the sentencing, this is what you said at 46. You said, just for clarity of the record, I completely understand and agree with the punchline, which is there's a concerning record even if we completely disregard the allegations surrounding the arrest. So you did concede that even apart from the arrest itself, all the reasons we've discussed, that this wasn't sort of a run-of-the-mill failure to report. This was someone who had a serious underlying conviction who immediately cut off the bracelet under the circumstances we already discussed. So it wasn't a run-of-the-mill, like, grade C violation, right? Of course not. And we never maintained that it was, which is why we asked for a guideline sentence. The application notes to the inapplicable guidelines actually – But if it's not a run-of-the-mill case, why can't the judge give an above-guideline sentence? These are just policy statements. They're like double advisory. They're policy statements. They're advisory to begin with. And why couldn't a judge say this is not a run-of-the-mill? He just, you know, didn't show up for a week. And the government pointed out that the judge said this wasn't a split-second decision where he got upset, and then he went back and reported he had multiple weeks where the judge didn't issue the warrant. And then he's found in these concerning circumstances surrounding the arrest. So I don't think this is a run-of-the-mill violation, a grade C violation. This is a very serious grade C violation. We never maintained that it was a run-of-the-mill. Had it been a run-of-the-mill – reasonable, what sentence above the guideline range would not be? Like, where between 11 and 24 would not be shockingly high? Well, so, Your Honor – What's the magic number? Where's the number? Yeah, if we think the judge could have gone above 11 because it's not a run-of-the-mill grade C. It's a serious grade C. And we say, but, you know, two years is shockingly high. What's the one that's not shockingly high? To be clear, I'm not conceding in any way that an above-guideline sentence here would have been proper. I'm asking you to assume that. Assume that something above the guideline is proper. What's the right number? That's – As was talked about by the government and Judge Kahn, we're not talking about a large – you know, we're not talking about double, but it's a relatively small number of months we're dealing with. So if we send it back as substantively unreasonable and the judge said, okay, I give him 15 months, 16 months, is that going to be substantially unreasonable, too? It depends. Of course, this Court has to give tremendous deference to that, but there needs to be adequate justification for whatever the number is. We maintain there was not. If I may direct the Court's attention, actually, the Court – Your Honors asked the government a question about whether it was aware of any case where an individual who admitted to a grade C violation got the statutory maximum. Of all the cases that we've cited in – aside both briefs, United States v. Lewis, an individual admitted to numerous technical violations, not just one. Probation asked for guidelines. Government did not have a position. The range was three to nine months. The Court sentenced that individual to 24 months, and this Court reversed on plain error. So that's the case – Which case is that? United States v. Lewis. Okay. All right. Thank you both. We appreciate the argument. That was our decision. Have a good day.